## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JEROME J. PATELUNAS, II       | CIVIL ACTION NO. 1:24-CV-2190
     Plaintiff,

       v.             | (Judge Mariani)

LAFLIN BORO, et al.       | (Magistrate Judge Latella)

     Defendants.

## REPORT AND RECOMMENDATION

### I.     Introduction

Federal pleading requirements are relatively simple: all that is required under the Federal Rules of Civil Procedure is a short and plain statement explaining the grounds for the court's jurisdiction, "a short and plain statement of the claim showing that the pleader is entitled to relief," and a demand for the relief sought. Fed. R. Civ. P. 8(a). This straightforward requirement is often lost on *pro se* litigants who prefer to narrate a saga putting judges in the oft quoted position of "pigs, hunting for truffles" buried in pleadings. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Unfortunately, this is the case in the matter before the Court. The Complaint in this case consists of a lengthy whimsical tale of a criminal organization that involved multiple players whose activities spanned decades. It is nearly impossible to discern a cognizable federal claim. Because the

Complaint does not contain a plain statement sufficient "to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial" and it "plac[es] an unjustified burden on the court . . . because [it is] forced to select the relevant material from a mass of verbiage," *Folk v. Bureau of Prisons*, No. 21-1543, 2021 WL 3521143, at *3 (3d Cir. Aug. 11, 2021), it will be recommended that the Complaint be dismissed on preliminary screening and that the Plaintiff be given the opportunity to file an amended complaint that complies with Fed. R. Civ. P. 8.

## II.    Procedural History

On December 19, 2024, Plaintiff Jerome J. Patelunas, II, filed a *pro se* Complaint that named fourteen separate defendants, raising numerous claims that are nearly impossible to decipher. (Doc. 1). The following day, Plaintiff filed a document entitled "Motion for Emergency Injuctive [sic] Relief and Hearing Ex Parte" (Doc. 4). On December 23, 2024, United States Magistrate Judge Susan E. Schwab issued a Report and Recommendation construing the motion as one for a temporary restraining order and recommended that the motion be denied. (Doc. 6). United States District Judge Robert D. Mariani adopted the Report and Recommendation by Order on January 24, 2025, and the Motion was denied. (Doc. 22). While the Report and Recommendation addressing Plaintiff's request for a temporary restraining order was pending, Plaintiff filed three additional motions,

*viz.*, Motions for Preliminary Injunction (Docs. 14 and 15), Motion to Expedite (Doc. 16) and Motion for Order. (Doc. 20). On April 7, 2025, United States Magistrate Judge Phillip J. Caraballo granted the Plaintiff's request to proceed *in forma pauperis* by Order. (Doc. 23). Because there were dispositive motions pending that are outside the jurisdiction of the undersigned to address, a Report and Recommendation was issued on June 23, 2025, recommending that all outstanding motions be denied. (Doc. 24). On July 28, 2025, the matter was referred to the undersigned to complete preliminary screening and the June 23, 2025, Report and Recommendation was held in abeyance. (Doc. 25).

## II. Background

The allegations contained in the Complaint were summarized in the Report and Recommendation filed on June 23, 2025, (Doc. 25), as follows. After listing fourteen defendants, some of whom are not discussed in the Complaint at all, Plaintiff begins by describing actions allegedly taken by Attorney Anthony Lupas, Jr., now deceased, who he asserts was the "manager/administrator" of a "large, sophisticated, very politically connected/active" criminal organization—what Plaintiff calls the "Lupas Criminal Organization." (Doc. 1 at 4, ¶ 1). Plaintiff claims that this organization is made up of people and groups in various positions of power, from individuals involved in local government—including Judge David Lupas, Laflin Boro Fire Chief Marc Malvissi, Laflin Boro Police Department, and

3

the Pennsylvania State Police (*id.* at 5, ¶ 10)—to people with unknown roles, including William Vandyke, Jason Talarico, and Robert Stella. (*Id.* at 8–10).

Plaintiff's factual allegations are difficult to follow. He alleges that the "Lupas Criminal Organization's" "bust-out" schemes date back to the early 1990s. (*Id.* at 7, ¶ 19). In 1999, Plaintiff says that a bribe disguised as a "campaign contribution" was made against Plaintiff and his family. (*Id.* at 6, ¶ 12). Plaintiff also alleges, with no factual support, that in 2017 the "criminal organization" contributed to an arson resulting in the death of three children. (*Id.* at 4, ¶ 3). Plaintiff himself has apparently witnessed numerous crimes that the "organization" committed, although no further details are provided. (*Id.* at ¶ 2).

In his Complaint, Plaintiff explains that the nebulous "Lupas Crime Organization" has taken action against him personally. Plaintiff asserts he is working on a "book on corruption" and attempting to get a retrial for an unknown person named Bonnett (*id.* at 8, ¶ 34), providing that as the reason why the "Lupas Criminal Organization" is targeting him. One of the "organization's" "'bust-out' schemes" is to take over a target's property, either selling it for profit or stealing it entirely. (*Id.* at 6, ¶ 11). As an example of this, Plaintiff alleges that at some unknown point, his retaining wall was damaged and Fire Chief Marc Malvissi seemingly prevented the repair of this wall "in an attempt to harm Plaintiff financially." (*Id.* at ¶¶ 13–15). He also asserts that Mr. Malvissi used government

4

resources to purchase a traffic or "Zingaretti" camera and trained it on Plaintiff's property, with the purpose of spying on Plaintiff and his family. (*Id.* at ¶ 16). No evidence has been provided to support any of these claims or conclusions.

From there, Plaintiff narrows in on encounters he has had with individuals who have purportedly informed him that they are involved with criminal organizations. Defendant William Vandyke allegedly lured Plaintiff in by requesting to hire him for a job, but "this was all just a ruse to open a conversation with [Plaintiff]." (*Id.* at 8, ¶¶ 25–26). The purpose of this conversation is unknown. Once Plaintiff made Mr. Vandyke aware of his suspicions, Mr. Vandyke allegedly "had a psychological meltdown/episode" on June 17 and 18, 2024, both of which were purportedly recorded on video. (*Id.* at ¶¶ 30–31).

Next, Plaintiff asserts that Defendant Jason Tricarico owed him $10,000. Once Plaintiff tried to collect this money, Mr. Tricarico began threatening him. (*Id.* at 9, ¶¶ 37–41). The time and place of these threats is not stated. Plaintiff alleges that both Vandyke and Tricarico had "bragged about being mob/Organized Crime associates" although, again, the time and place of these comments is not stated. (*Id.* at 10, ¶ 42). Plaintiff does make numerous mentions to both Vandyke and Tricarico's alleged criminal backgrounds; however, this is irrelevant as they serve no purpose other than to imply that the men are more likely to engage in further criminal activity. (*See id.* at 9, ¶ 38; 10 at ¶ 46).

5

Lastly, Plaintiff alleges that law enforcement, including the Luzerne County Sheriff's Department, Pennsylvania State Police (PSP), and Laflin Borough Police, are involved in the "criminal organization" as well because of their refusal to investigate Plaintiff's allegations. (*Id.* at 5–6, ¶ 10). Essentially, he cites what he perceives to be inadequate police work as evidence that they are involved in a criminal organization. (*See, e.g.*, *id.* at 10, ¶ 46). He also asserts that the PSP issued him "a summons for harassment of Rob Stell," although the details behind the harassment are not included in the Complaint. (*Id.* at 10, ¶¶ 42–44).

Plaintiff requests compensatory and punitive damages, in addition to $200,000 "to reimburse for lost opportunity and revenue." (*Id.* at 13, ¶¶ 1–2). He also requests actions that he believes would "secure" Plaintiff and his family, including installation of "heavy duty gates" in his driveway, implementation of a security system, and procurement of three steel shipping containers. (*Id.* at ¶ 2). Furthermore, Plaintiff requests that all his "utilities [] be reinstated to 2004 condition asap," and requests a portable generator be used temporarily while the utilities and structure are undergoing their replacement. (*Id.* at 7, ¶ 22).

## III.    Standards

### A. Preliminary Screening of IFP Proceedings

The statute governing proceedings *in forma pauperis*, 28 U.S.C. § 1915 directs that "[n]otwithstanding any filing fee, or any portion thereof, that may have

been paid, the court shall dismiss the case at any time if the court determines that .

. . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on

which relief may be granted; or (iii) seeks monetary relief against a defendant who

is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

"The United States Supreme Court has held that 28 U.S.C. § 1915(e)(2)(B)'s

term 'frivolous' when applied to a complaint, 'embraces not only the inarguable

legal conclusion, but also the fanciful factual allegation,' such that a claim is

frivolous within the meaning of § 1915(e)(2)(B) if it 'lacks an arguable basis either

in law or in fact'" *Romeo v. State of Delaware*, No. CIV.A. 04-153-SLR, 2004 WL

1043196, at *1 (D. Del. Apr. 27, 2004) (quoting *Neitzke v. Williams,* 490 U.S. 319,

325, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989)).

This statutory text of § 1915(e)(2)(B)(ii) mirrors the language of Rule

12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint

should be dismissed for "failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b)(6). Therefore, "[w]hen reviewing complaints pursuant to 28

U.S.C. § 1915(e)(2)(B), the court must apply the standard of review set forth in

Fed.R.Civ.P. 12(b)(6)." *Romeo*, 2004 WL 1043196, at *1. While both 12(b)(6) and

§ 1915(e)(2)(B) warrant dismissal, § 1915 allows for a claim to be dismissed prior

to the service of the complaint, while courts should not rely on 12(b)(6) to dismiss

a complaint *sua sponte* prior to service of process. *Green v. LG Elecs. USA*, No.

7

23-1062, 2023 WL 3915102, at *2 (3d Cir. June 9, 2023), *cert. dismissed*, 144 S.

Ct. 874, 218 L. Ed. 2d 59 (2024), *reconsideration denied*, 144 S. Ct. 2516, 219 L.

Ed. 2d 1198 (2024). However, the standard for dismissal for failure to state a claim

is the same for § 1915(e)(2)(B)(ii) and 12(b)(6). *See Treadway v. DOC*

*Pennsylvania*, No. 25-CV-2800, 2025 WL 1888208, at *2 (E.D. Pa. July 8, 2025)

("Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed

by the same standard applicable to motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6)") (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir.

1999)). *See also Bush v. Doe (I)*, 858 F. App'x 520, 522 (3d Cir. 2021) (citing

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

### B. The 12(b)(6) Standard

Rule 8 of the Federal Rules of Civil Procedure states that a claim must

include "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a). This requires the Plaintiff to put forth

evidence that, "when taken as true, suggest[s] the required elements of a particular

legal theory." *McNeilly v. City of Pittsburgh*, 40 F.Supp.3d 643, 650 (W.D. Pa.

2014). The Plaintiff must state "sufficient factual allegations which 'nudge' its

claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009)). The

purpose is to ensure "fair notice of the factual basis of a claim while raising a

'reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* at 651.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This means that a complaint may be dismissed if it does not present sufficient facts to support a plausible claim: "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The court must accept both the Plaintiff's allegations and any reasonable inferences that can be drawn as true and construe them in the light most favorable to the non-moving party. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). However, it need not accept "'unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Reciting the elements that make up a cause of action and supporting them with "mere conclusory statements" is insufficient to give those

statements the presumption of truth. *McNeilly*, 40 F.Supp.3d at 650 (citing *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937).

When faced with a motion to dismiss pursuant to 12(b)(6), a court should conduct a two-part analysis: 1) separate the factual and legal elements of a claim; and 2) "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (internal citation removed). The court may consider facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This analysis requires the court to look at the claims on a case-by-case basis and rely both "on its judicial experience and common sense." *McNeilly*, 40 F.Supp.3d at 650. The court will not be reaching legal conclusions, but instead is merely determining "whether the plaintiff should be permitted to offer evidence in support of the allegations." *Id.* (citing *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000)).

## IV.    Discussion

The underlying Complaint lists fourteen separate defendants ranging from government officials to private citizens and businesses to local governments. (Doc. 1, at p. 2). Against those defendants, Plaintiff alleges "federal civil rights

10

violations" including witness intimidation; fraud; extortion; "unequal protection";
First Amendment violations; unlawful search; and violations of the Racketeer
Influenced and Corrupt Organizations (RICO) act. (Doc 1, at 2–3).

Plaintiff thereafter delves into the "Facts" section. He describes what he
calls the "Lupas Criminal Organization" and how it conducts its "bust-out"
schemes, the influence it has on public officials, and how Plaintiff is targeted due
to his ongoing efforts to expose the innerworkings of this "criminal organization."
(Doc. 1, at 7, ¶ 17). However, there are no intelligible allegations to support
Plaintiff's claims or that that the "Lupas Criminal Organization" even exists.
Plaintiff claims he is "a witness to many of the crimes committed by this
organization" but does not provide any specifics as to what he witnessed, when he
witnessed it, or who was involved. (Doc. 1 at 4, ¶ 2). He also details his
interactions with two people, Mr. Vandyke and Mr. Tricarico, who he claims,
"bragged about being mob/Organized Crime associates" (*id.* at 10, ¶ 42) but again,
does not provide any additional information to support this broad claim. Plaintiff
describes how he believes the "bust-out" schemes are conducted, but this
description is not nearly enough to allege misconduct or a conspiracy to support a
cognizable claim. The Complaint is full of language such as, "Plaintiff believes,"
(*id.* at ¶ 46) and "[l]ogic dictates" (*id.* at 11, ¶ 53), but beliefs do not constitute "a
short and plain statement of the claim showing that the pleader is entitled to relief."

11

Fed. R. Civ. P. 8. It appears that Plaintiff is drawing his own conclusions based on his perceptions.

The Complaint fails to explain how each of the defendants fit into the larger conspiracy, and or how a defendant specifically violated Mr. Patelunas' federally protected rights. While attempts have been made at piecing together the facts averred against numerous defendants with the violations alleged, the Court is unable to "sift through [Patelunas'] excessively prolix, disjointed, and fantastical [] complaint to try and discern if he has implicated (let alone plausibly alleged) a [] clam against one or more" of the fourteen defendants. *Johnson v. McGinley*, No. 4:24-CV-00992, 2025 WL 1085218, at *4 (M.D. Pa. Apr. 10, 2025). In short, the fatal flaw in the Complaint is that it fails to allege specific conduct on the part of an identifiable defendant that supports a federal civil rights claim.

Due to the disjointed nature of the complaint, it is respectfully recommended that Plaintiff's complaint be dismissed without prejudice pursuant to § 1915(e)(2)(B)(i) and (ii). The complaint, as read, is frivolous as it is based on a "fantastic or delusional factual scenario" and "an indisputably meritless legal theory." *Torruella-Torres v. FCI Fort Dix*, 218 F. Supp. 3d 270, 272 (D. Del. 2016), *aff'd sub nom. Torruella-Torres v. Fort Dix FCI*, 678 F. App'x 59 (3d Cir. 2017) (internal quotations omitted). Additionally, it fails to state a claim upon which relief can be granted. The Plaintiff must present factual allegations that are

12

"enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Plaintiff has failed to do so.

It is recommended that Patelunas be given leave to amend. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (Plaintiffs "should receive leave to amend unless amendment would be inequitable or futile"). If Plaintiff chooses to file an amended complaint, it must comply with Rule 8 by clearly outlining which claims he is bringing against which defendant. He must also, with "emphasis [] on clarity and brevity," present facts that support his claims and demonstrate that he has a right to relief. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996). Additionally, if Plaintiff wishes to bring claims about multiple defendants in his amended complaint, it must be in accordance with Rule 20: he must explain why it is proper to join them and what the common question of law or fact is.

## IV. Recommendation

Based on the foregoing, it is respectfully recommended that the Court dismiss the Complaint without prejudice, giving Plaintiff leave to amend. It is further recommended that Plaintiff's motion for a preliminary injunction (Docs. 14 and 15), the Motion to Expedite (Doc. 16), and Motion for Order (Doc. 20) be

denied as moot,[1] and that the matter be remanded to the undersigned for further

proceedings.

Dated: July 30, 2025                                    **/s/ Leo A. Latella**
                                                        Leo A. Latella
                                                        United States Magistrate Judge

---

[1] Even if all of Plaintiff's outstanding motions are considered on their merits, they should be denied for the reasons set forth in the Report and Recommendation dated June 23, 2025. (Doc. 24).

14

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEROME J. PATELUNAS, II<br>Plaintiff, | CIVIL ACTION NO. 1:24-CV-2190 |
| v. | (Judge Mariani) |
| LAFLIN BORO, et al. | (Magistrate Judge Latella) |
| Defendants. | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the

forgoing **Report and Recommendation** dated July 30, 2025.

Any party may obtain review of the Report and Recommendation pursuant

to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a
> prisoner case or a habeas corpus petition within fourteen (14) days after being
> served with a copy thereof. Such party shall file with the clerk of court, and
> serve on the magistrate judge and all parties, written objections which shall
> specifically identify the portions of the proposed findings, recommendations
> or report to which objection is made and the basis for such objections. The
> briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a de novo determination of those portions of the report or specified
> proposed findings or recommendations to which objection is made and may
> accept, reject, or modify, in whole or in part, the findings or recommendations
> made by the magistrate judge. The judge, however, need conduct a new
> hearing only in his or her discretion or where required by law, and may
> consider the record developed before the magistrate judge, making his or her

own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: July 30, 2025                              **/s/ Leo A. Latella**
                                                  Leo A. Latella
                                                  United States Magistrate Judge